UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| WILLIAM RUSSELL; MICHELLE SMEDLEY; J.J.B., by next friend, MICHELLE SMEDLEY; J.M.B., by next friend, MICHELLE SMEDLEY, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | 1:10-CV-210 |
| v. | ) ) | Chief Judge Curtis L. Collier |
| WILLIAM PUCKETT, individually and as a law enforcement officer with the Chattanooga, Tennessee Police Department, and PHIL GRUBB, individually and as a law enforcement officer with the Chattanooga, Tennessee Police Department, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## <u>MEMORANDUM</u>

Before the Court is a motion for summary judgment filed by Defendants William Puckett

("Officer Puckett") and Phil Grubb ("Officer Grubb"), in their individual and official capacities

(collectively, "Defendants") (Court File No. 13). Plaintiffs William Russell, Michelle Smedley,

Jocelyn Barby,[1] by next friend, Michelle Smedley, and Joshua Barby, by next friend, Michelle

Smedley (collectively, "Plaintiffs") filed a response to Defendants' motion for summary judgment

(Court File No. 27). Defendants submitted a reply (Court File No. 28). For the following reasons,

---

[1] At the time of the events at issue, Jocelyn Barby and Joshua Barby were minors. However, according to their affidavits, Ms. Barby and Mr. Barby are now at least eighteen years of age, and Plaintiffs' attorney submitted his response to Defendants' motion for summary judgment without redaction. In light of Fed. R. Civ. P. 5.2(h), the Court finds Plaintiffs have waived the protection of Fed. R. Civ. P. 5.2(a).

the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 13).


# I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

## A.     Factual Background

On August 6, 2009, Officer Puckett, a detective in the Property Crimes Division of the Chattanooga Police Department ("CPD"), sought a search warrant for Defendant William Russell and his residence (Court File No. 14 ("Puckett Aff."), ¶ 8; Court File No. 14-2, p. 1). Officer Puckett suspected Mr. Russell was involved in the robbery of EZ Liquor, which he investigated on July 27, 2009 (*id.*). Around the same date as the liquor store robbery, Officer Grubb, also with the Property Crimes Division of the CPD, was investigating a pawn shop robbery at Check Jewelry & Loan (Grubb Aff. ¶ 3). Officer Puckett learned of Officer Grubb's investigation, and the two concluded the robberies were probably related (Puckett Aff. ¶ 3; Grubb Aff. ¶ 3). On August 6, 2009, Defendants aver they questioned Kevin White, the owner of a car believed to have been involved in the pawn shop robbery (Puckett Aff. ¶ 6; Grubb Aff. ¶ 5). During this conversation, Defendants claim they learned of a relationship between Mr. White and Mr. Russell. Officer Puckett claims this conversation and further investigation that day led him to believe Mr. Russell was a possible suspect.

Officer Puckett assembled a photo lineup that contained six photographs, one of which was a photo of Mr. Russell (Puckett Aff. ¶ 7; Court File No. 14-1; Court File No. 17 ("Shelton Aff."), ¶ 3). Officer Puckett and his supervisor, Sergeant Rebecca Shelton, assert they then went to the house of Anthony Simoneau, a witness to the liquor store robbery, and presented him with the photo lineup (Puckett Aff. ¶ 7; Shelton Aff. ¶ 2). According to Officer Puckett and Sergeant Shelton, the

witness immediately identified Mr. Russell from the photo lineup as the driver of the car used during the liquor store robbery (Puckett Aff. ¶ 7; Shelton Aff. ¶ 5; Court File No. 14-1). In light of these facts, Officer Puckett submitted an affidavit to a judicial officer highlighting the following:

3.  The potential defendant in this case is William Russell . . . .
4.  The location to be searched in this case is the residence of William Russell, 7834 Hancock Road . . . .
5.  The victim in this case is E-Z Liquor, which was robbed at gunpoint on 7-27-09. A witness of the Robbery, Anthony Simoneau, picked Mr. Russell out of a photo line-up immediately, and told police that Mr. Russell is one of the suspects involved in the Robbery. . . .

(Puckett Aff. ¶ 8; Court File No. 14-2, p.1). Finding probable cause existed, the judicial officer issued a search warrant authorizing a search of Mr. Russell and his residence for "(1) guns, (2) ammunition, (3) incriminating photographs and/or documentation, (4) contraband, [and] (5) any evidence of criminal activity" (Puckett Aff. ¶ 8; Court File No. 14-3, p. 1).

Prior to executing the warrant, the CPD assessed the possible danger involved in its execution using a Risk Assessment Matrix (Puckett Aff. ¶ 9; Court File No. 18 ("Wenger Aff."), ¶ 3; Court File No. 19 ("Chambers Aff."), ¶ 3). The CPD requires that the Special Weapons and Tactics ("SWAT") Team be present when executing a search warrant if the score is 30 or higher (*id.*). Here, Defendants calculated a score of 37 (Puckett Aff. ¶ 9).[2]

The parties vigorously dispute several aspects of the search and subsequent arrests, however, the Court will attempt to present the facts in the light most favorable to Plaintiffs. That evening, the CPD executed a search warrant at Plaintiffs' residence (Puckett Aff. ¶ 10). Jocelyn Barby, who was sixteen years old at the time, asserts she was in the living room watching television when the SWAT

---

[2] Although Plaintiffs assert the Risk Assessment Score was falsified or calculated in error (Court File No. 27), the Court still finds it necessary to include the score Defendants purportedly relied upon in assessing the SWAT Team's level of involvement.

Team entered (Court File No. 27-3 ("Ms. Barby Aff."), ¶ 4). She claims she heard a "rumbling noise" outside and was approaching the front door when it was "burst open" (*id.*). Her mother, Michelle Smedley, asserts she was taking a shower at the time, and did not hear the police announce their entry (Court File No. 27-4 ("Smedley Aff."), ¶ 4). It is uncontroverted that Defendants are not members of the SWAT Team.

Officer Welles, a member of the SWAT Team, admits that he entered the bathroom where Ms. Smedley was present (Welles Aff. ¶ 5). Ms. Smedley avers approximately six officers in total entered the bathroom where she was taking a shower (Smedley Aff. ¶ 5). However, she does not present any evidence showing Officer Puckett or Officer Grubb were among the officers who entered the bathroom, and Defendants have presented evidence averring neither officer entered the bathroom (Welles Aff. ¶ 8; Wenger Aff. ¶ 11). Ms. Smedley alleges she was told to come out of the shower despite being completely nude and made to stand uncovered for thirty to forty-five minutes. Further, she claims a gun was pointed in her direction the entire time (*id.*), and Ms. Barby, who joined her mother in the bathroom, claims a gun was also pointed at her (Court File No. 13-3 ("Ms. Barby Dep."), p. 17). Ms. Barby claims in her affidavit she was not allowed to get clothes for her mother, but her deposition testimony reveals, at some point, she was allowed to do so (Ms. Barby Aff. ¶ 5; Ms. Barby Dep., p. 17). Also, at some point, Ms. Smedley and Ms. Barby were escorted outside and allowed to sit in chairs in the front yard (Welles Aff. ¶ 9; Ms. Barby Dep., p. 18).[3]

---

[3] Among other facts in dispute regarding the SWAT Team's entry and securing of the house, Defendants allege Officer Wenger and the SWAT Team officers exited their vehicles and began yelling "Police, Search Warrant" as they approached the house and as Officer Wenger knocked on the door (Wenger Aff. ¶ 5). Upon no response, CPD entered the house by force by ramming the front door open (Wenger Aff. ¶ 6; Welles Aff. ¶ 4). Further, Officer Welles claims he was the only officer who entered the bathroom where Ms. Smedley was located, and although he entered with his gun drawn, he immediately lowered it when he realized she was not a threat (Welles Aff. ¶¶ 5-7). He also

4

According to Defendants, no Property Crimes officers, including Officer Puckett and Officer Grubb, entered the house until the SWAT team finished securing the home and gave them permission to enter (Grubb Aff. ¶ 8; Puckett Aff. ¶ 10). After the house was secured, Officer Puckett entered the house to conduct a search (Puckett Aff. ¶ 10).[4] Although Officer Grubb asserts he did not enter the house at all, Ms. Smedley and Ms. Barby assert they did see him enter the house during the search (Smedley Aff. ¶ 7; Ms. Barby Aff. ¶ 9).

Ms. Smedley and Ms. Barby claim Joshua Barby, the son of Ms. Smedley, left the house with a friend prior to the officers entering the house to head to the recreation center (Ms. Barby Aff. ¶ 4; Smedley Aff. ¶ 4). Mr. Barby claims he had been gone from his house with a friend playing basketball for approximately thirty minutes when he was stopped by a police officer (Court File No. 27-2 (Mr. Barby Aff. ¶ 5). Mr. Barby claims he and his friend were handcuffed and escorted back to his house, and a gun was pointed at his head (*id.*; Smedley Aff. ¶ 9).

Defendants claim Officer Mark Bender, a Property Crimes Officer with the CPD, observed Mr. Barby and his friend leave the house and head towards the recreation center prior to the search (Court File No. 21 ("Bender Aff."), ¶ 4, 5). Officer Bender claims he saw the young men watching the SWAT Team enter Plaintiffs' residence from where they were at the recreation center, and at some point, they began to run (Bender Aff. ¶ 6). Officer Bender claims he caught up with the young

claims he tried to calm her down, and the time from which he entered and she was allowed to get dressed, behind the shower curtain, was less than ten minutes.

[4] Ms. Smedley and Ms. Barby both claim they saw Defendants enter the house during the search, but fail to provide any time frame for when Defendants entered. In light of all the evidence before the Court, the Court finds it is reasonable to infer the search did not begin until after the house was secured by the SWAT Team, and Plaintiffs' testimony need not be viewed as being at odds with Defendants' testimony.

5

men behind the recreation center, but argues he only patted them down for weapons and escorted them back to Plaintiffs' residence with his gun at "low-ready." Finally, Officer Bender claims Mr. Barby was not handcuffed when he was being escorted back to the house (Bender Aff. ¶ 7).

Mr. Barby was taken to the Police Services Center. Plaintiffs assert Mr. Barby was questioned by police officers without a parent present (Mr. Barby Aff. ¶ 6). Mr. Barby asserts Officer Puckett was present during his questioning. Mr. Russell, a stepfather-like figure in Mr. Barby's life (Mr. Barby Aff. ¶ 2) who later arrived at the Police Services Center, claims he was never told about Mr. Barby's questioning or that a parent needed to be present (Court File No. 27-1 ("Russell Aff."), ¶ 7). He also claims he never told Mr. Barby to answer any questions. Officer Puckett and Officer Grubb were not the officers who took Mr. Barby into custody, and no evidence has been presented to show Mr. Grubb was among the officers who questioned Mr. Barby (Puckett Aff. ¶ 14; Grubb Aff. ¶ 10).

During the execution of the search, Mr. Russell arrived at the house (Puckett Aff. ¶ 13; Russell Aff. ¶ 8). He was taken into custody and transported to the Police Services Center where he waived his *Miranda* rights (Puckett Aff. ¶ 13; Court File No. 14-4; Russell Dep., pp. 53-54). Officer Puckett took a recorded statement from Mr. Russell (Puckett Aff. ¶ 13). Mr. Russell also claims Officer Grubb questioned him (Russell Aff. ¶ 8). Mr. Russell was ultimately released and no charges were pressed against him (Puckett Aff. ¶ 14). Also, no items were seized from the residence of the Plaintiffs (Puckett Aff. ¶ 12). Defendants admit the front door and back kitchen window were damaged during the SWAT Team's entry (*id.*), but Plaintiffs further allege their home was left in "disarray" and a television was broken (Ms. Barby Aff. ¶ 6; Ms. Smedley Aff. ¶ 11).

### B. Procedural Background

On August 6, 2010, Plaintiffs brought suit against Defendants, individually and as law enforcement officers with the CPD, under 42 U.S.C. §§ 1983 and 1985, and under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution (Court File No. 1). Plaintiffs seek both compensatory and punitive damages.

On August 26, 2011, Defendants moved for summary judgment (Court File No. 13).

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no

7

genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.     SECTION 1983 CLAIMS

Plaintiffs' complaint alleges Defendants violated their constitutional rights, both individually and as law enforcement officers of the CPD. To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). When a party brings a suit against an officer in his official capacity, it is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against a municipality also involve a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: (1) whether the plaintiff has been deprived of a constitutional right; and (2) whether the municipality is responsible for the violation. *Id.*

A municipality cannot be liable under a *respondeat superior* theory for § 1983 claims. *Id.* Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001). A plaintiff can also show that a municipality's failure to train or supervise its employees demonstrates deliberate indifference to the rights of persons with whom officers will have contact, such that it effectively constitutes a government custom or policy. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

### A.    Claims Against Defendants in Their Official Capacities

Defendants move for summary judgment on the grounds that Plaintiffs have failed to establish Defendants are liable in their official capacities. Because § 1983 claims against law enforcement officers are construed as suits against the government entity, the Court will construe Plaintiffs' claims as causes of action against the City of Chattanooga. Plaintiffs assert they are not alleging in their complaint the City of Chattanooga (1) is liable under the theory of *respondeat superior*, (2) had any unconstitutional policy or custom, or (3) failed to provide training or had "deliberate indifference" towards officer training (Court File No. 27). Further, Plaintiffs have failed to present any genuine issue of material fact that the City of Chattanooga has a "widespread practice" of engaging in unconstitutional conduct that "is so permanent and well settled" to

9

constitute official policy, or that the City of Chattanooga has provided inadequate supervision of its officers resulting from "deliberate indifference." Accordingly, the Court will **DISMISS** Plaintiffs' claims against Defendants in their official capacities.

### B. Claims Against Officers in their Individual Capacities

Defendants assert they are entitled to qualified immunity with respect to Plaintiffs' § 1983 claims alleging violations of the Fourth and Fourteenth Amendments. Under the doctrine of qualified immunity, government officials are generally shielded from civil damages liability when performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Courts typically employ a two-part test to determine whether qualified immunity will apply. First, a court must consider whether, when viewed in the light most favorable to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). It must also consider "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir.

2007) (citation omitted). This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *See Saucier*, 533 U.S. at 201. Since the failure of either prong is dispositive in favor of the defendant, the Court may address either prong of the test first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because qualified immunity shields reasonable conduct, even when it is mistaken, the Sixth Circuit has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same"). "[I]f officers of reasonable competence could disagree [on the legality of the action], immunity should be recognized." *Malley*, 475 U.S. at 341.

Defendants assert one primary reason they should be granted qualified immunity is because they were not directly involved in or responsible for the alleged constitutional violations. It is well established that a defendant's liability under 42 U.S.C. § 1983 cannot be based solely on the doctrine of respondeat superior. *See Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants--the term "supervisory liability" is a misnomer."); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("This court has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees."). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. A plaintiff must show "the

11

supervisor encouraged the specific incident of misconduct or in some way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). At a minimum, a plaintiff must show "a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.*

The Plaintiffs have asserted Defendants violated their Fourth and Fourteenth Amendment rights in light of the following conduct: (1) obtaining a search warrant under false pretenses; (2) conducting an unreasonable search; (3) engaging in an unlawful arrest of Mr. Russell; and (4) engaging in an unlawful arrest of Mr. Barby. The Court will address each of these claims against each individual officer in turn.

### 1. Officer Puckett

### a. Obtaining a Search Warrant Under False Pretenses

Plaintiffs assert Officer Puckett violated their Fourth and Fourteenth Amendment rights by using "recklessly conveyed false information" to obtain a search warrant (Court File No. 1., p. 3). Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. amend. IV. As a general rule, in determining whether probable cause exists to authorize the search, the magistrate judge or other judicial officer should consider the "totality of the circumstances" and ask whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Mills v. City of Barbourville*, 389 F.3d 568, 575-76 (6th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The judicial officer must be presented with "sufficient information" to enable him to determine whether probable cause exists; "his action cannot be a mere ratification of the bare conclusions of others." *Id.*

12

Under § 1983, a law enforcement official can be held liable for an illegal search or seizure if the official "knowingly and deliberately, or with a reckless disregard for the truth" makes "false statements or omissions that create a falsehood" and "such statements or omissions are material, or necessary, to the finding of probable cause." *Peet v. City of Detroit*, 502 F.3d 557, 570 (6th Cir. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)). An affidavit containing such false statements or omissions "must be purged of the falsehood to determine whether the affidavit still contains sufficient facts to establish probable cause, *Adams v. Emmett Tp. Dept. of Pub. Safety*, Nos. 94-1533, 94-1563, 1994 WL 657081, at *1 (6th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). "If probable cause still exists after the purge, then no Fourth Amendment violation has occurred." *Id.* Thus, for Plaintiffs to overcome Defendant's entitlement to qualified immunity, they must make "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Here, Plaintiffs have failed to establish Officer Puckett stated a "deliberate falsehood" or "showed reckless disregard for the truth" when obtaining the search warrant for Mr. Russell and his residence. Plaintiffs primarily take issue with the following statement in Defendant's affidavit: "The victim in this case is E-Z Liquor, which was robbed at gunpoint on 7-27-09. A witness of the Robbery, Anthony Simoneau picked Mr. Russell out of a photo line-up immediately, and told police that Mr. Russell is one of the suspects involved in the Robbery." (Court File No. 14-2, p.1). Plaintiffs purport this statement is inadmissible hearsay and that Defendant has no evidence to support his allegations against Mr. Russell. Plaintiffs conclude this shows Officer Puckett recklessly conveyed false information to the judicial officer to obtain a search warrant.

13

However, contrary to Plaintiffs' assertions, Defendant has revealed the basis upon which the search warrant was sought, and Plaintiffs have failed to show that basis is premised on falsehoods and untruthful statements. Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Officer Puckett has provided notarized affidavits from various individuals involved at different stages of the investigation, such as Officer Grubb and Sergeant Shelton, who offered testimony based on their personal knowledge of different aspects of the investigation. Further, Officer Puckett's own affidavit clearly explains that he was the officer assigned to this case, he conducted the investigation, he created the photo lineup, and he was present when Mr. Simoneau identified Mr. Russell as being the driver at the scene of the crime. It was upon this information that Officer Puckett believed there was probable cause, and he then sought a search warrant from a judicial officer. Plaintiffs have failed to make any "substantial showing" that Defendant deliberately or knowingly made false statements, and failed to provide any support for their broad claims that Defendant's proof is "blatant hearsay" (Court File No. 27). As a result, the Court must **DISMISS** Plaintiffs' claim that Officer Puckett obtained a warrant under false pretenses.

### b. Unlawful Search

Plaintiffs assert Defendant engaged in an unlawful search in violation of the Fourth and Fourteenth Amendments on two primary grounds. First, Plaintiffs contend Defendant and his fellow officers "broke into the residence . . . without any announcement of their authority . . . or that they had a search warrants." Second, Plaintiffs claim Officer Puckett and his fellow officers ordered Ms.

14

Smedley "out of the shower" and made her "stand completely nude for 45 minutes" in front of other officers (Court File No. 1, p. 4). Although Plaintiffs attempt to treat all the officers as one, the Court, as noted earlier, cannot hold Officer Puckett liable if he was not personally involved in the alleged unconstitutional conduct. Thus, for each allegation, the Court will consider Officer Puckett's level of involvement in determining whether the facts set forth show Officer Puckett's actions "violated a constitutional right" before proceeding any further with the analysis. *Saucier*, 533 U.S. at 201.

First, Plaintiffs assert Officer Puckett and the officers violated their Fourth and Fourteenth Amendment rights by failing to "knock and announce" their presence before forcibly entering their residence. According to the Sixth Circuit, it is "clearly established law that the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991). However, as a preliminary matter, Plaintiffs have failed to establish that any genuine issue of material fact exists with regard to whether Officer Puckett was among the entry team of officers engaged in the alleged unlawful conduct. *See Thorton v. Fray*, 429 F. App'x 504, 510 (6th Cir. 2011) (finding, post-*Iqbal*, the officers who did not participate in the search or who did not enter until after the search had begun were entitled to qualified immunity on the plaintiff's "knock and announce claims"); *cf Hall*, 932 F.2d at 1154 (finding, pre-*Iqbal*, that an officer who was the "primary mover" behind the investigation was not entitled to qualified immunity even though he did not directly engage in the alleged constitutional violation). Ms. Barby testified that she heard "rumbling noises" moments before the SWAT Team entered the living room where she was watching television (Ms. Barby Aff. ¶¶ 4-5). Defendant, as the moving party, does not have to disprove the nonmoving party's claim; instead he need only "'show[]'--that is, point[] out to the district court--that there is an absence of evidence to support the

nonmoving party's case." *Westgate Vill. Shopping Ctr. v. Lion Dry Goods Co.*, 21 F.3d 429 (6th Cir. 1994) (quoting *Celotex Corp.*, 477 U.S. at 325). It is uncontroverted that Officer Puckett is not part of the SWAT Team; he was a detective with the Property Crimes Division of CPD. Plaintiffs do not assert that they saw Officer Puckett among the entry team. Moreover, Defendant has presented evidence showing the Property Crimes Division officers did not enter until the SWAT Team secured the residence (Puckett Aff. ¶ 10; Grubb Aff. ¶ 8; Wenger Aff. ¶ 11; Chambers Aff. ¶ 9; Welles Aff. ¶ 10). In light of this evidence before the Court and the current case law, the Court finds a reasonable jury would not find Officer Puckett personally engaged in the alleged unconstitutional conduct, nor that he "authorized, approved, or knowingly acquiesced in" such behavior.

Second, Plaintiffs assert Officer Puckett and the other officers made Ms. Smedley stand nude and refused to allow her to obtain clothes for forty-five minutes. Even if the officers' conduct rose to the level of a constitutional violation, Plaintiffs have again failed to sufficiently raise any genuine issues of material fact as to whether Officer Puckett was involved in the incident involving Ms. Smedley. Neither Ms. Smedley nor Ms. Barby avers Defendant Puckett was among the officers alleged to have entered the bathroom while Ms. Smedley was nude. Further, Officers Puckett and Officers Grubb both assert they never saw Ms. Smedley nude or were in the bathroom during the alleged incident (Puckett Aff. ¶ 11; Grubb Aff. ¶ 8; Welles Aff. ¶ 8; Wenger Aff. ¶ 11). Accordingly, the Court finds a reasonable jury would not conclude Plaintiffs have provided sufficient evidence to establish Officer Puckett engaged in the alleged conduct towards Ms. Smedley.

Accordingly, the Court will **DISMISS** Plaintiffs' claim regarding the alleged unreasonable search.

### c. Unlawful Arrest of Mr. Russell

16

Plaintiffs assert Officer Puckett arrested Mr. Russell without a warrant and without probable cause. Under the Fourth Amendment, an individual has the right "to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. For an arrest to be reasonable without a warrant under the Fourth Amendment, an officer must have "probable cause to believe that a criminal offense has been or is being committed" and "the validity of the arrest does not depend on whether the suspect actually committed the crime." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (internal citations omitted). Thus, "in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Brooks v. Rothe*, 577 F.3d 701, 706 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon*, 492 F.3d at 341 (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)).

Here, Officer Puckett took Mr. Russell into custody. Therefore, the Court must first consider whether Officer's Puckett's conduct was violative of the Fourth Amendment. Plaintiffs assert Mr. Russell was arrested without a warrant in violation of his Fourth and Fourteenth Amendment rights, but fail to establish Officer Puckett violated his constitutional rights for lack of probable cause. As previously noted, Officer Puckett obtained a search warrant from a judicial officer allowing him to not only search Mr. Russell's residence but also Mr. Russell. In his affidavit requesting a search warrant, Officer Puckett averred that he believed Mr. Russell was a suspect in the robbery of EZ Liquor store. This conclusion was based upon the similarities between the EZ Liquor and Check Jewelry and Loan robberies, an interview linking Mr. Russell to one of the suspects, further investigation, and the photo lineup witness identification. The "facts and circumstances" before

17

Officer Puckett at the time of the arrest would be sufficient for a reasonable officer to conclude probable cause existed. At the time of the arrest, it was not necessary for Officer Puckett to prove Mr. Russell had actually committed the robberies. Because Plaintiffs have failed to show Officer Puckett lacked probable cause in effecting Mr. Russell's arrest, the Court finds Plaintiffs have not established Officer Puckett committed a constitutional violation. Thus, the Court will **DISMISS** Plaintiffs' claim alleging Officer Puckett unlawfully arrested Mr. Russell without a warrant and probable cause.

### d. Unlawful Arrest and Interrogation of Mr. Barby

Plaintiffs argue Officer Puckett and other officers unlawfully arrested Mr. Barby and acted with excessive force. Plaintiffs further argue Officer Puckett and the other officers unlawfully interrogated Mr. Barby at the Police Services Center without a parent present. As to the first two allegations, Plaintiffs have failed to present sufficient evidence to establish Officer Puckett was involved with Mr. Barby's arrest or engaged in any excessive force towards him. Based on Plaintiffs' account of events, the record reflects Officer Bender detaining Mr. Barby and a friend behind the recreation center, handcuffing them, and escorting them back to Plaintiffs' residence with a gun pointed at Mr. Barby. It then reflects Mr. Barby being taken into custody by an officer to the Police Services Center. What it does not reflect is Officer Puckett's involvement or approval of Officer Bender's conduct, nor his involvement in Mr. Barby's arrest. As a result, the Court need not consider whether Officer Puckett committed a constitutional violation with regard to Plaintiffs' unlawful arrest and excessive force claims.

However, Plaintiffs also assert Officer Puckett unlawfully questioned Mr. Barby without his parents present under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Plaintiffs fail to offer

18

any explanation with regard to what grounds they are asserting the alleged constitutional violations except to say the officers interrogated Mr. Barby without his mother, Ms. Smedley, present. Under the Fourth Amendment, Plaintiff's claim is improperly brought if he is trying to address the involuntariness of Mr. Barby's statement. Moreover, to the extent Plaintiffs are alleging a violation of the self-incrimination clause of the Fifth Amendment, they do not have a viable claim. "By its terms, the Fifth Amendment does not prohibit the act of compelling a self-incriminating statement other than for use in a criminal case." *Lingler v. Fechko*, 312 F.3d 237, 239 (6th Cir. 2002); *see also Chavez v. Martinez*, 538 U.S. 760, 767 ("[I]t is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs."). Similarly, to the extent Plaintiffs are alleging a violation of Mr. Barby's right to counsel under the Sixth Amendment, the right to counsel does not attach until "at or after the initiation of adversary judicial proceedings." *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). Here, Mr. Barby was never formally charged nor did he participate (and his statements were not used) in a criminal proceeding.

With regard to the Fourteenth Amendment claim, the Court will construe Plaintiffs' cause of action generously to also allege Defendant violated a liberty interest arising under state law and that is entitled to Fourteenth Amendment protection. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation of interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). To determine whether the due process clause of the Fourteenth Amendment protects a state created interest, courts "must look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972) (emphasis added). "Procedural rights that do not require a particular substantive outcome are not liberty interests

protected by the Fourteenth Amendment, even if the right is "mandatory." *Gibson v. McMurray*, 159 F.3d 230, 233 (6th Cir. 1998). Plaintiffs fail to identify for the Court the state law upon which it is relying for this claim regarding interrogation. Moreover, the state laws that are referenced by Plaintiffs--Tenn. Code Ann. §§ 37-1-115 and 37-1-113--specifically address procedures regarding the process for taking a child into custody, but do not require any substantive outcome. Accordingly, the Court **DISMISSES** Plaintiffs' Fourth, Fifth, Sixth, and Fourteenth Amendment claims against Officer Puckett on this grounds.[5]

In sum, the Court finds Plaintiffs have failed to present sufficient evidence to show Officer Puckett violated Plaintiffs' constitutional rights. Therefore, Officer Puckett is entitled to qualified immunity on these claims.

### 2. Officer Grubb

Plaintiffs assert the same § 1983 claims against Officer Grubb as they did against Officer Puckett. For similar reasons, the Court finds Officer Grubb is entitled to qualified immunity. As noted before, "a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Here, to the extent Officer Grubb assisted Officer Puckett obtain the search warrant, the Court has found no genuine issues of

---

[5] Plaintiffs do not explicitly state they are bringing a substantive due process claim against Defendant either. However, under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Any action by a law enforcement official which 'shocks the conscience' denies the victim of fundamental due process." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)). Here, however, the conduct upon which Officer Puckett was actually personally involved--requesting a search warrant and questioning Mr. Barby--fails to come anywhere near the conduct that would be considered conscience-shocking in light of the precedent in this area. Therefore, the Court **DISMISSES** any claims Plaintiffs may be asserting on this ground.

material fact exist with regard to whether any "deliberate falsehoods" were made in seeking the search warrant. *See Vakilian*, 335 F.3d at 517. The officers had probable cause as determined by the judicial officer, and a warrant was properly granted. Therefore, Plaintiffs claim that Defendant obtained a search warrant under false pretenses is **DISMISSED.**

The remaining § 1983 claims against Officer Grubb are also dismissed because Officer Grubb not only had no direct personal involvement, but he also did not approve, acquiesce, or authorize any of the alleged constitutional violations. Even after viewing the evidence in the light most favorable to Plaintiffs, Officer Grubb was not part of the SWAT entry team and he was not present when the alleged officers entered the bathroom where Ms. Smedley was located. Officer Grubb also was not involved with the arrest or questioning of Mr. Russell or Mr. Barby. Therefore, the Court finds Officer Grubb is entitled to qualified immunity on these claims, and all § 1983 claims brought against Officer Grubb are dismissed.

The Court will **GRANT** Defendants' motion for summary judgment with regard to the 42 U.S.C. § 1983 claims.


IV.    **SECTION 1985 CLAIM**

Plaintiffs assert in their Complaint that Defendants worked "in concert and in conspiracy" to commit the alleged constitutional violations. The Court construes Plaintiffs' Complaint to allege these acts are proof of a conspiracy pursuant to 42 U.S.C. § 1985. To bring a conspiracy claim under § 1985(3), Plaintiffs must show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a

person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian*, 335 F.3d at 518 (citing *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828-29 (1983)). Plaintiffs must present evidence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Estate of Smithers* ex rel. *Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) (citing *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000)). Additionally, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Here, Plaintiffs have made unsupported allegations that Officer Puckett and Officer Grubb engaged in a conspiracy with other officers of the CPD. Plaintiffs do not assert they are part of a protected class in their Complaint, nor do they provide any evidence of discriminatory animus. Stating that Defendants worked "in concert and conspiracy" with other CPD officers to violate Plaintiffs' constitutional rights, without more, is insufficient to sustain a claim of conspiracy under § 1985(3). Accordingly, the Court finds Plaintiffs have failed to establish Defendants engaged in a conspiracy and **DISMISSES** Plaintiffs' cause of action under § 1985.


## V. CONCLUSION

In light of the parties' arguments and the evidence on the record, as well as the reasons stated above, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 13).

An Order shall enter.

/s/ _____
**CURTIS L. COLLIER**

22

**CHIEF UNITED STATES DISTRICT JUDGE**

23